UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| TERRY W. HUSPON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00300-JMS-MJD |
| | ) | |
| DUSHAN ZATECKY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Motion for Summary Judgment as to Defendant Zatecky
And Denying Motion for Summary Judgment as to Defendant Talley**

Plaintiff Terry W. Huspon, a former inmate at Pendleton Correctional Facility, filed this 42 U.S.C. § 1983 action alleging that the defendants were deliberately indifferent for conducting welding projects in his cell house without taking proper safety measures. The defendants have moved for summary judgment. For the reasons below, that motion is granted as to defendant Warden Dushan Zatecky but denied as to defendant Officer Richard Talley.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment

1

because those tasks are left to the fact finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II. Material Facts

On August 31, 2016, a construction project began inside the "H" cell house at Pendleton, where Mr. Huspon was housed. Dkt. 35-1 at 5. The project involved welding, and on the next day Mr. Huspon notified Warden Zatecky that "toxic fumes as well as hot metal [were] flying around the cell-house . . . creating breathing problems, prevention of fresh air circulation [and] other health maladies." *Id.*

On September 15, 2016, Mr. Huspon awoke to loud noises and a burning smell. *Id.* at 2 (Huspon grievance). He checked his cell for fire and then pulled back a curtain at the front of his cell. Mr. Huspon alleges that this curtain was a bed sheet he had hung himself. Dkt. 116 at 2. Officer Talley says that one of the welders had hung the sheet. Dkt. 35-1 at 1 (grievance response). Regardless, once Mr. Huspon pulled back the sheet, he quickly discovered the source of the noise and burning smell. Officer Talley was conducting a welding project that involved moving a lock on the door in front of Mr. Huspon's cell. *Id.*

Mr. Huspon saw medical staff at Pendleton later on September 15, and the next day he was sent to an emergency room. Dkts. 110-1 and 110-2. The outside provider noted, "severe ocular welding burn 1 day ago. Extreme photophobia: [patient] unable to tolerate ophthalmoscope exam . . . probable corneal burn." Dkt. 117 at 26. He was prescribed Erythamiacin and Ketorolac eye drops. Dkt. 110-3 (prison medical records).

On September 20, 2016, the plant director at Pendleton issued a letter discussing the construction project. *Id.* at 6. He noted that "large fans [were] being utilized to move air out of the

construction area and to the outside of the housing unit" and that "all the expanded metal in the work area has been covered with polyethylene plastic sheeting to minimize dust from permeating into the cell houses." *Id.* Mr. Huspon does not dispute the use of fans and plastic sheeting, but he alleges that they were used only to protect "the staff area" and not the inmates' cell range. Dkt. 116 at 5.

Mr. Huspon asserts that he has experienced health issues, including "breathing difficulties and damage to his lungs," that he believes were caused by the welding fumes. Dkt. 116 at 2−3.

### III. Discussion

Mr. Huspon alleges that both defendants were deliberately indifferent to his safety during the welding project. To survive summary judgment, he must point to evidence that would allow a reasonable juror to find the defendants disregarded a known, excessive risk of an objectively serious harm to inmate health or safety. *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (same).

Both defendants assert qualified immunity as a defense. Accordingly, the Court must consider "consider (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at that time." *Estate of Clark v. Walker*, 865 F.3d 544, 550 (7th Cir. 2017) (cleaned up).

**A. Officer Talley**

Officer Talley does not dispute that the potential harm from flying welding sparks was objectively serious. His argument focuses on the sheet in front of Mr. Huspon's cell. Dkt. 112 at 7; dkt. 119 at 11. Given the factual dispute on the issue, the Court must assume, for purposes of summary judgment, that Mr. Huspon himself put up the sheet. In this version of events, Officer

3

Talley made no effort whatsoever to protect Mr. Huspon while performing a welding project within striking distance of Mr. Huspon's cell. The only question, then, is whether Officer Talley knew that the risk of serious harm from a welding project in front of Mr. Huspon's cell with only a hanging bedsheet as protection was "excessive." A reasonable juror could conclude that it was, so Mr. Huspon's claim survives the first step in the qualified immunity analysis.

Officer Talley offers little regarding the second step of qualified immunity. He argues it is not clearly established that he was required to take "additional" precautions to protect Mr. Huspon. Dkt. 112 at 9. But under Mr. Huspon's version of the facts, Officer Talley took *no* precautions. In any event, Mr. Huspon had a clearly established right to be free from dangerous conditions. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Moving to a lower level of generality does no good for Officer Talley, because Mr. Huspon also has a clearly established right to be free from bits of hot metal flying at his face.

Because Mr. Huspon alleges a violation of a clearly established right and a reasonable juror could find that Officer Talley knowingly disregarded an excessive risk of harm, Officer Talley is not entitled to summary judgment.

### B. Warden Zatecky

Warden Zatecky does not dispute that the fumes and debris from a welding project create a risk of serious harm. But unlike with Officer Talley, there is no dispute that Warden Zatecky took precautions to protect the inmates of Mr. Huspon's cell house. Large fans were used to circulate air and push the welding fumes outside. And plastic sheeting was used to minimize dust from entering the inmates' living quarters.

Mr. Huspon complains that the fans and plastic sheeting were placed such that they benefitted prison staff more than the inmates. But even if this is true, it does not follow that Warden

Zatecky was indifferent to the inmates' risk of harm. There is no evidence that Warden Zatecky knew where the fans and plastic sheeting were placed within the cell house, and there is no evidence that he knew they were ineffective for protecting the inmates from harmful fumes.

Because there is no evidence that Warden Zatecky knew the prison's precautions were ineffective at preventing serious harm, he is entitled to judgment as a matter of law.

### IV. Conclusion

The defendant's motion for summary judgment, dkt. [110], is **granted** as to Warden Dushan Zatecky but **denied** as to Officer Richard Talley. This case shall proceed to settlement or trial on Mr. Huspon's claim against Officer Talley.

The Court *sua sponte* reconsiders Mr. Huspon's motion for assistance recruiting counsel. That motion, dkt. [90], is **granted** to the extent that the Court will attempt to recruit counsel to represent Mr. Huspon for the remainder of this case.

**IT IS SO ORDERED.**

Date: 2/28/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

TERRY W. HUSPON
882533
WABASH VALLEY – CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Sarah Jean Shores
INDIANA OFFICE OF THE ATTORNEY GENERAL
sarah.shores@atg.in.gov

Mollie Ann Slinker
INDIANA ATTORNEY GENERAL
mollie.slinker@atg.in.gov